EARLIER THIS YEAR YOU REQUESTED AN INFORMAL OPINION ON THE SUBJECT OF SECURITIES LENDING. SPECIFICALLY, YOU ASKED WHETHER IT IS A CONFLICT OF INTEREST UNDER OKLAHOMA LAW FOR A CUSTODIAN BANK TO LOAN SECURITIES TO A BORROWER IN A FIDUCIARY CAPACITY, WHEN IT ALSO LOANS FUNDS TO THE SAME PERSON OR FIRM IN ITS BANKING CAPACITY. AFTER RESEARCHING THE RELEVANT STATE AND FEDERAL STATUTES, AS WELL AS THE APPLICABLE FEDERAL REGULATIONS, IT APPEARS THAT THIS ACTIVITY IS PERMISSIBLE IF DONE WITH THE CONSENT OF THE RETIREMENT SYSTEM AFTER FULL DISCLOSURE BY THE CUSTODIAN BANK.
AS I UNDERSTAND THE SECURITIES LENDING TRANSACTION, SECURITIES OWNED BY THE INDIVIDUAL RETIREMENT SYSTEMS ARE HELD BY A CUSTODIAN BANK, WHICH SERVES IN A FIDUCIARY CAPACITY TO THE SYSTEMS. WITH THE CONSENT OF THE RETIREMENT SYSTEM, THE CUSTODIAN BANK THEN LOANS THE RETIREMENT SYSTEM'S SECURITIES TO BROKERAGE HOUSES FOR EITHER CASH COLLATERAL OR FOR SECURITIES OF EQUAL VALUE. THESE BORROWED SECURITIES ARE USED TO COVER SHORT SELLS AND OTHER CONTINGENCIES. IF THE BORROWED SECURITIES INCREASE IN VALUE, MORE COLLATERAL IS GIVEN, AND IF THEY DECREASE IN VALUE, SOME OF THE COLLATERAL IS RETURNED. EVENTUALLY, THE BORROWED SECURITIES ARE RETURNED TO THE CUSTODIAN BANK, AND THE COLLATERAL IS RETURNED TO THE BROKER THAT BORROWED THE SECURITIES.
IN THIS PARTICULAR CASE, THERE ARE CONCERNS BECAUSE THE CUSTODIAN BANK IS LENDING SECURITIES TO BROKERAGE HOUSES THAT ARE ALSO RECEIVING LOANS FROM THE SAME BANK WHILE PERFORMING ITS TRADITIONAL BANKING FUNCTION. IN SUCH A SITUATION, THE BANK FINDS ITSELF SERVING AS AN AGENT TO TWO POSSIBLY CONFLICTING PARTIES; AND THIS COULD CONSTITUTE A CONFLICT OF INTEREST.
AT THIS POINT, WE ARE UNAWARE OF ANY SITUATION WHERE A CUSTODIAN BANK IS LOANING THE FUNDS USED AS CASH COLLATERAL FOR A SECURITIES LENDING TRANSACTION. BUT FOR PURPOSES OF THIS OPINION WE WILL ASSUME THAT SUCH A TRANSACTION HAS OCCURRED.
INITIALLY, IT SHOULD BE NOTED THAT THE RELATIONSHIP BETWEEN THE TRUSTEE BANK AND THE INDIVIDUAL RETIREMENT SYSTEM FORMS PRINCIPAL-AGENT RELATIONSHIP. THIS TERM DENOTE A "FIDUCIARY" RELATIONSHIP WHICH RESULTS FROM THE MANIFESTATION OF CONSENT BY ONE PERSON TO ANOTHER THAT THE OTHER HALL CT FOR HIS BENEFIT AND SUBJECT TO HIS CONTROL, AND CONSENT BY THE OTHER O TO ACT." SMITH V. ST. FRANCIS HOSPITAL INC. 676 P.2D 279 (OKL. APP. 1983), CITING RESTATEMENT (SECOND) OF AGENCY, S 1 (1958); SEE ALSO, FARMERS NATIONAL GRAIN CORP. V. YOUNG, 102 P.2D 180, (OKLA. 1940), APPLEBY V. KEWANEE OIL CO., 279 F.2D 334 (10TH CIR. 1960), AND STEINBRUQGE V. HADDOCK, 281 F.2D 871 (10TH CIR. 1960).
SUCH A RELATIONSHIP EXISTS BETWEEN THE CUSTODIAN BANK ND THE RETIREMENT SYSTEM, IN THAT THE BANK IS AUTHORIZED BY THE RETIREMENT SYSTEM TO MAKE LOANS OF SECURITIES, PURCHASES OF STOCK, AND TO PERFORM OTHER FIDUCIARY DUTIES AT THE REQUEST OF THE RETIREMENT SYSTEM. SIMILARLY, A PRINCIPAL-AGENT RELATIONSHIP APPEARS TO EXIST BETWEEN THE TRUSTEE BANK AND THE VARIOUS BROKERAGE HOUSES, SINCE THE BANK, AT THE REQUEST OF THE BROKER, LOCATES AND FACILITATES THE SECURITIES LENDING TRANSACTION AND PERFORMS GENERAL BANKING SERVICES FOR THE VARIOUS BROKERAGE HOUSES. THE BANK ALSO STANDS TO MAKE A COMMERCIAL GAIN FROM ITS LENDING FUNCTIONS WHICH IN NO WAY BENEFITS THE RETIREMENT SYSTEMS.
THIS AGENCY-PARTNERSHIP RELATIONSHIP PLACES SEVERAL DISTINCT DUTIES ON THE AGENT. NOTABLY, THE AGENT IS OBLIGATED TO SERVE HIS PRINCIPAL WITH DILIGENCE, INTEGRITY AND SKILL, WELEETKA LIGHT AND WATER CO. V. BURLESON, 142 P. 1029, (OKLA. 1914); SEE ALSO, WILCOX V. REYNOLDS, 36 P.2D 488, (OKLA. 1934) (AGENT'S OBLIGATION TO PRINCIPAL DEMANDS STRICTEST INTEGRITY, GOOD FAITH AND MOST FAITHFUL SERVICE). ADDITIONALLY, THE AGENT IS OBLIGATED TO DISCLOSE TO THE PRINCIPAL EVERYTHING MATERIAL IN CONNECTION WITH THE TRANSACTION, INGRAM V. FIDELITY-PHOENIX FIRE INS. CO., 16 F.2D 251 (10TH CIR. 1927), CITING BAKER V. HUMPHREY, 101 U.S. 494 (1880); SEE ALSO, MCNEAL V. STEINBERGER, 135 P.2D 490, (OKLA. 1943).
THE DUTY TO SERVE WITH GOOD FAITH, INTEGRITY AND SKILL GREATLY RESTRICTS THE AGENT'S ABILITY TO SERVE MULTIPLE PRINCIPALS IN THE SAME TRANSACTION, PARTICULARLY IF THEIR INTERESTS ARE ADVERSE. THE FACT THAT A DUAL AGENCY RELATIONSHIP EXISTS IS NOT PER SE IMPROPER KNUDSON V. WEEKS, 394 F.SUPP. 963 (W.D.OKL. 1975). IN SUCH A SITUATION, HOWEVER, IT IS CLEAR THAT AN AGENT CANNOT SERVE TWO POSSIBLY ADVERSE PARTIES IN THE SAME TRANSACTION WITHOUT THE CONSENT OF BOTH. AS THE OKLAHOMA SUPREME COURT NOTED IN BAKER V. HEILGER, 156 P.2D 592, (OKLA. 1944):
 "(A)N AGENT OR BROKER, WITHOUT THE CONSENT OF THE PRINCIPALS, CANNOT IN THE SAME TRANSACTION ACT AS AGENT OF ONE PRINCIPAL, AND ALSO AGENT OF ANOTHER PRINCIPAL."
ID. AT 594, CITING BUILDER'S SUPPLY CO. V. SMITH, 133 SO. 721, (ALA. 1931); 3 C.J.S., AGENCY, 138 ET SE. T 6; AND 2 AM.JUR. 262 AT 211, AND S 266 AT 214, ND NOTES; SEE A160 SELF V. GILBERT, 231 P. 870, (OKLA. 1924).
THUS, THE AGENT HAS A DUTY TO DISCLOSE ALL MATERIAL FACT TO THE PRINCIPAL, AND MUST RECEIVE THE PRINCIPAL'S CONSENT IN ORDER TO REPRESENT POTENTIALLY ADVERSE PARTIES IN THE SAME TRANSACTION. AFTER SPEAKING WITH SEVERAL OF THE RETIREMENT SYSTEMS, IT APPEARS THAT THE CUSTODIAN BANKS INVOLVED HAVE BOTH FULLY DISCLOSED ALL THE FACTS INVOLVING THEIR RELATIONSHIP WITH THE BROKERAGE HOUSES, AND THE RETIREMENT SYSTEMS HAVE CONSENTED TO THIS DUAL AGENCY RELATIONSHIP CREATED IN THE SECURITIES LENDING TRANSACTION. IF THESE FACTS EXIST IN EACH CASE, IT APPEARS THAT THIS TRANSACTION WOULD BE PERMISSIBLE UNDER OKLAHOMA LAW. MY PRIMARY FOCUS WAS ON ANSWERING THIS QUESTION AS IT RELATES TO OKLAHOMA LAW. BUT MY RESEARCH INDICATES THAT THIS POSITION WOULD BE TAKEN BY MOST COURTS. FURTHER, MY RESEARCH OF BOTH OKLAHOMA AND FEDERAL STATUTORY LAW, AS WELL AS THE VARIOUS ADMINISTRATIVE RULES IN THE AREA, REVEALED NO LANGUAGE THAT WOULD ALTER THIS OUTCOME.
WHILE THIS OPINION INDICATES THAT THE SECURITIES LENDING TRANSACTION IS LEGAL UNDER OKLAHOMA LAW, IT DOES NOT INDICATE A PREFERENCE FOR THIS TYPE OF TRANSACTION AND IT MOST CERTAINLY DOESN'T SUGGEST THAT THE RETIREMENT SYSTEMS CONSENT TO THIS APPARENT CONFLICT. IF THE RESPECTIVE BOARDS DESIRE, THEY CAN INSIST THAT THE REQUEST FOR PROPOSALS OR INVITATIONS TO BID FOR CUSTODIAN BANK SERVICES CONTAIN PROVISIONS PROHIBITING THE DUAL ROLE. THIS DETERMINATION IS LEFT TO THE BOARDS OF THE VARIOUS RETIREMENT SYSTEMS, SINCE THEY ARE IN THE BEST POSITION TO EVALUATE ALL OF THE FACTORS INVOLVED IN DECIDING WHETHER OR NOT TO PARTICIPATE IN SECURITIES LENDING OR TO PERMIT THE DUAL ROLE OF THE CUSTODIAN BANKS.
(THOMAS L. SPENCER)